IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

BRUCE BENSON, )
 )
       Plaintiff, )
 )
vs. ) Case No. 04-0491-CV-W-ODS
 )
CONNECTICUT GENERAL LIFE )
INSURANCE CO., et al., )
 )
       Defendants. )

ORDER AND OPINION DENYING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

      This case essentially presents two claims: one for failure to pay benefits due under an ERISA-governed disability plan and one for failure to provide documents required by ERISA. The record does not contain undisputed facts entitling Defendants to judgment as a matter of law.[1]

      Ordinarily, the Court refrains from presenting its view of the facts when denying summary judgment because a jury is usually the ultimate factfinder and the Court's view of the facts will have no bearing on the case. This case, however, is to be tried by the Court, so a brief discussion of the Court's view[2] of the current record may be helpful to the parties.

---

[1] Plaintiff did not seek summary judgment, so there is no reason to determine whether there are undisputed facts entitling him to judgment as a matter of law.

[2] The Court declines CGLIC's request to strike Plaintiff's Suggestions in Opposition for being too long. The Court retroactively grants Plaintiff leave to exceed the page limit.

A. The Benefit Decision

### 1. Factual Background

As is appropriate when considering a summary judgment motion, the record has been reviewed in the light most favorable to the non-moving party. Plaintiff began working for Defendant Sprint Corporation ("Sprint") in August 1999. His initial job was as billing analyst but he later assumed the duties of a project manager. Due to chronic fatigue syndrome, fibromyalgia, depression and other maladies, Plaintiff applied for and received short-term disability benefits and qualified for leave under the Family and Medical Leave Act ("FMLA"). Later, he was awarded Social Security benefits based on his disability. On February 28, 2002, Sprint's Benefit Representative (Natalie Casalou) sent Plaintiff a memo advising he had been receiving short-term benefits for eighteen weeks and recommending he begin the application process for long-term disability benefits. Plaintiff submitted the completed application on April 10, 2002, and his short-term benefits expired on April 25, 2002.

On July 8, 2002, a representative from CGLIC (Katie Perich) contacted Ms. Casalou and requested a copy of Plaintiff's enrollment form, a copy of his job description, and completion of a form describing the physical demands of his job. Ms. Casalou never forwarded a job description. She completed the form provided by indicating Plaintiff's job title was "Billing Analyst," the duties were "primarily sedentary," and Plaintiff spent 60% of his time sitting, 20% standing and 20% walking.[3] On August 23, CGLIC sent Plaintiff a letter apologizing for the delay and indicating more time would be needed to consider his claim. On September 9, CGLIC decided to deny the claim, but a letter to that effect was not sent to Plaintiff until September 30. The September 30

---

[3]Plaintiff argues Ms. Casalou checked boxes indicating Plaintiff's position was both sedentary and "involved considerable physical activity," which would be contradictory. Even though the record is to be viewed in the light most favorable to Plaintiff, the Court disagrees. The purported check in the latter box is actually the "tail" on the letter "y" written in the line above (in the word "Analyst").

2

letter explained the definition of "Total Disability is when you're completely unable to carry out every duty of you[r] job because of illness or injury during the waiting period before basic long-term disability benefits from the company begin and for the next 24 months. Afterwards, total disability means that you're unable to work in any occupation for which you're reasonably qualified through training, education or experience." The letter concludes by explaining that Plaintiff's previous position was sedentary and he remained able to perform sedentary work; therefore, he is not disabled. The letter did not identify or discuss the specific duties of his job.

Plaintiff appealed the denial and, in connection therewith, submitted additional statements from his treating physician. CGLIC denied his appeal on March 26, 2003, explaining there was no indication Plaintiff's doctor required him to stop working – but (1) the doctor indicated Plaintiff was physically incapable of working, (2) there is no requirement that a claimant's personal physician direct him to stop working, and (3) as documented in a letter dated January 16, 2004, CGLIC knew a *different* doctor had recommended Plaintiff seek benefits. In any event, as with the initial denial, the second denial did not identify or discuss Plaintiff's ability to perform his specific job duties; it only concluded Plaintiff could perform sedentary work.

## *2. Legal Discussion*

CGLIC emphasizes its decision is entitled to deference and cannot be reversed unless it is not supported by substantial evidence. This deferential standard applies when the benefit plan grants the plan administrator discretion to make decisions regarding the award of benefits. Delta Family-Care Disability & Survivorship Plan v. Marshall, 258 F.3d 834, 841 (8th Cir. 2001), cert. denied, 534 U.S. 1162 (2002). Deference is not due if there is a conflict of interest or procedural irregularities infected the administrator's ability to perform its fiduciary duties. See Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265 & n.1 (8th Cir. 1997).

The Court cannot confidently state the deferential standard applies. Contributing to this situation are the following factors: (1) it appears that certain information

3

Case 4:04-cv-00491-ODS   Document 121   Filed 05/22/06   Page 3 of 7

necessary to determining whether a conflict exists or explaining certain apparent procedural irregularities was not produced during discovery[4] and (2) CGLIC has, to some extent, supported its arguments with materials that were not produced during discovery or that were not in its administrative file (where one would suspect the information in question to have been found).  The Court is not concluding these irregularities exist or that they will affect the standard of review; the Court is merely explaining why a final decision about the degree of deference due CGLIC's decision cannot be made at this time.

For present purposes, it does not matter how much deference is due.  Even if CGLIC's decision is entitled to deference, the record (viewed in the light set forth above) lacks substantial evidence to support the denial.  CGLIC determined (1) Plaintiff's prior job was sedentary, (2) Plaintiff could perform sedentary work, therefore (3) Plaintiff was not disabled.  This analysis is inconsistent with the policy's definition of disability.  As noted earlier, a person is disabled in the first two years following the waiting period if they are unable to perform the duties of their job.  The fact that Plaintiff could perform sedentary work does not mean he could perform his job, even though it was sedentary.  To accept this analysis would destroy the policy's distinction between the first two years of coverage and the subsequent years of coverage: after two years, disability depends on whether the claimant can perform *any* work, but until then the issue is whether the claimant can perform his last job.  Therefore, CGLIC's decision misapplied the plain terms of the policy.

Augmenting the Court's denial of summary judgment is the absence of critical or helpful material from the record.  First and foremost, CGLIC never obtained a description of Plaintiff's job duties.  Consequently, CGLIC lacked the ability to decide whether Plaintiff could perform his job.  Simply knowing the job is sedentary does not

---

[4]Included in this category are what the Court views as specious objections to discovery (e.g., objecting to the use of the word "you" in a question because the term is not defined).  Even when information is provided "subject to" an objection (which eviscerates the value of an objection and wastes everyone's time), the recipient and the Court cannot be sure the answer is full and complete.

4

mean anyone with the ability to perform sedentary work can perform it.  Of lesser importance is the apparent failure to consider (or at least communicate to the reviewing physicians) Plaintiff's qualification for and receipt of short-term disability benefits and social security benefits.

CGLIC also emphasizes that one of Plaintiff's doctors (Dr. Greg Boyd) was unwilling to declare Plaintiff was disabled.  The Court cannot find record support for this statement, and therefore cannot evaluate its import.  For instance, if Dr. Boyd was unwilling to state Plaintiff could not work, this would have no bearing on the case; as noted, the question is whether Plaintiff could perform his prior job.  In any event, Dr. Boyd indicated Plaintiff's job could not "be modified to allow for handling with impairment" and did not fill in the section on the form asking when Plaintiff could return to his "regular occupation" or to "any occupation."  Benson 398.  One of CGLIC's consulting physicians contacted Dr. Boyd and was told "there was 'some possibility does [sic] exist that [Plaintiff] is disabled but it is not clear cut that he is disabled.'"  Benson 179.  The Court is not presently persuaded this sentence fragment expresses Dr. Boyd's opinion that Plaintiff was able to perform all of his job duties.

Disputed issues of material fact preclude the Court from concluding CGLIC is entitled to judgment as a matter of law.

### B.  Plaintiff's Requests for Documents

ERISA imposes a duty on the plan "administrator" to supply certain documents upon request.  29 U.S.C. § 1132(c).  The "administrator" is "the person so designated by the terms of the instrument under which the plan is operated."  Id. § 1002(16)(A)(i).  The insurer is not the plan administrator solely by virtue of its status as the insurer.  Ross v. Railcar Am. Group Disability Income Plan, 285 F.3d 735, 743-44 (8th Cir.), cert. denied, 537 U.S. 885 (2002); VanderKlok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 617-18 (6th Cir. 1992); see also Thorpe v. Retirement Plan of Pillsbury Co., 80 F.3d 439, 444 (10th Cir. 1996).  Under no circumstance is the insurance company deemed to be the administrator by operation of law; the only way an insurance company may be

5

deemed the administrator is if it is specifically designated. If no party is designated the administrator, the plan sponsor (i.e., the employer) is deemed to be the administrator. 29 U.S.C. § 1002(16)(A)(ii).

The record contains various plan documents, and little explanation as to what they are, when they governed, what goes with what, and so forth. One document specifically identifies Sprint as the plan administrator. Other documents indicate the plan "is administered by CIGNA" and do not identify Sprint as the administrator. Some documents are silent on the topic.

CIGNA suggests there is a difference between "administering the plan" and "administering benefits under the plan." CIGNA may be correct. However, the record is not clear on several points, and it should be remembered that some of the documents suggest CIGNA administered *the plan*, not *benefits under the plan.* Adding further confusion is the fact that the application for benefits is to be sent to Sprint; therefore, the reference to CIGNA cannot be understood as merely providing an address to send applications for benefits. Until the record is clarified (at trial) by, at a minimum, establishing which documents were effective at which times, the Court is not persuaded CIGNA was not the plan administrator at some time relevant to these proceedings.[5]

The penalty for failing to produce documents is not mandatory, e.g., Chesnut v. Montgomery, 307 F.3d 698, 703 (8th Cir. 2002), and Defendants offer a variety of reasons why the Court should decline to impose any penalty. Disputed issues of fact preclude the Court from making that decision at this time. The Court needs a better understanding of (1) who the administrator was, (2) what requests were made, (3) what efforts to comply were made, and (4) the timing of all requests and responses. The

---

[5]The Court rejects Plaintiff's argument that CIGNA is the *de facto* administrator because such a conclusion is not permitted in light of the statute and the cases cited herein.

6

Case 4:04-cv-00491-ODS   Document 121   Filed 05/22/06   Page 6 of 7

best way to evaluate this matter is in the context of the case as a whole, particularly given that Plaintiff's primary claim (the denial of benefits) is to be tried.

IT IS SO ORDERED.

|  |  |
|---|---|
| DATE: May 22, 2006 | /s/ Ortrie D. Smith<br>ORTRIE D. SMITH, JUDGE<br>UNITED STATES DISTRICT COURT |